UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| TAMARA BOWLING, individually ) | |
| and as Administratrix of the ) | |
| Estate of Don Bowling, ) | |
| deceased ) | Civil Case No. |
| ) | 5:11-cv-140-JMH |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

This action is before the Court on cross-motions for summary judgment. (D.E. 37, 38). Both Plaintiff and Defendant have filed Responses to the opposing summary judgment motions (D.E. 41, 44) and have filed Replies in further support of their own motions (D.E. 56, 57). These motions are now ripe for decision. For the reasons which follow, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Motion for Summary Judgment is denied.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On May 21, 2008, Don Bowling went to the Veterans Affairs Medical Center ("VAMC") in Lexington, Kentucky to see his primary care physician, Dr. Connie Hackney. (D.E. 30, Hackney Deposition, at 13). In response to a routine question from Dr. Hackney asking Mr. Bowling if he was

depressed, Mr. Bowling expressed a specific suicidal plan by forming his hand into the shape of a pistol, pointing it toward his mouth, and gesturing as if he was pulling the trigger. (D.E. 30, Hackney Deposition, at 14-15). Dr. Hackney also discovered that Mr. Bowling possessed firearms in his home with which he could potentially enact this suicidal plan. (D.E. 30, Hackney Deposition, at 18).

Upon witnessing Mr. Bowling's conduct, Dr. Hackney decided that Mr. Bowling should be admitted to the VAMC psychiatric unit. (D.E. 30, Hackney Deposition, at 16). She first tried to convince him to agree to voluntary admission, but when he refused, Dr. Hackney decided that Mr. Bowling should be admitted for an involuntary 72-hour hold. (D.E. 30, Hackney Deposition, at 21-22). Dr. Hackney went to the waiting room to advise Plaintiff, Mrs. Bowling, that Mr. Bowling should be admitted to the psychiatric unit. (D.E. 30, Hackney Deposition, at 18-19). Dr. Hackney asked Mrs. Bowling to help her convince Mr. Bowling to admit himself voluntarily but also advised Plaintiff that she needed to make sure that she removed the firearms from their home no matter what happened. (D.E. 30, Hackney Deposition, at 18-19).

In the exam room, both Plaintiff and Mr. Bowling opposed Mr. Bowling's admission to the psychiatric unit.

(D.E. 30, Hackney Deposition, at 19-20).   After Plaintiff stated that she did not think Mr. Bowling could tolerate spending three days in a locked unit, she and Mr. Bowling walked out of the exam room and headed toward the elevators.   (D.E. 30, Hackney Deposition, at 20).

As the Bowlings approached the elevators, several VA police officers, including Officer William Curtis, arrived on the scene.   (D.E. 26, Struening Deposition, at 14-15; D.E. 33, Curtis Deposition, at 30-31).   When Officer Curtis approached Mr. Bowling, Mr. Bowling reported that he was not suicidal and wanted to go home.   (D.E. 33, Curtis Deposition, at 30-31).   Mrs. Bowling also objected to her husband's involuntary hold, making statements such as "I'm not going to let them do this to you . . . let's go home" and "we're getting out of here . . . they're not doing this to you." (D.E. 34, Adams Deposition, at 26; D.E. 26, Struening Deposition, at 21).

Officer Curtis then spoke with Dr. Hackney and a few nurses.   (D.E. 33, Curtis Deposition, at 33-34).   According to Dr. Hackney and the nurses, Dr. Hackney told Officer Curtis that she had placed an involuntary 72-hour hold on Mr. Bowling.   (D.E. 30, Hackney Deposition, at 21; D.E. 36, Read Deposition, at 16-19).   Officer Curtis then told Dr. Hackney that she lacked the authority to do this and told

3

the Bowlings they were free to leave.  (D.E. 30, Hackney Deposition, at 21; D.E. 36, Read Deposition, at 16-19).  Thereafter, the Bowlings left the VAMC and did not return. (D.E. 30, Hackney Deposition, at 20).

The VAMC medical staff faxed a copy of the involuntary 72-hour hold to the Winchester Police Department, and officers reported to the Bowlings' home to perform a welfare check on May 21, 2008, and May 22, 2008.  (D.E. 35, George Deposition, at 37).  The police officers concluded that Mr. Bowling did not meet the criteria to be taken into custody under K.R.S. § 202A.041, and left. (D.E. 37-5, Calls for Welfare Checks).

Then, on May 23, 2008, and May 27, 2008, a suicide prevention coordinator and a social worker from the Behavioral Health Lab at the VAMC called Mr. Bowling's home.  (D.E. 37-2, Selected VA Medical Records, at VA-024; D.E. 29, Sawyers Deposition, at 20).  The social worker, Ms. Sherri Sawyers, spoke with Mr. Bowling and conducted a suicide risk assessment via telephone.  (D.E. 29, Sawyers Deposition, at 20-25).  Based on Mr. Bowling's answers, Ms. Sawyers assessed Mr. Bowling as low-risk for suicide on May 27, 2008.  (D.E. 29, Sawyers Deposition, at 30-31).  On June 29, 2008, Mr. Bowling committed suicide at his place

of work in Winchester, Kentucky using a firearm obtained from his home. (D.E. 37-6, Death Certificate).

As required by 28 U.S.C. §§ 2672 and 2675(a), Plaintiff filed a claim with the Department of Veterans Affairs, but it was denied on October 21, 2010. Thereafter, Plaintiff filed this wrongful death and personal injury action under the FTCA alleging medical malpractice.

## II. STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the factual evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function on a summary judgment motion is not to weigh the evidence, but to decide whether there are genuine issues of material fact for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377,

380 (6th Cir. 2004).   A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law.   *Anderson*, 477 U.S. at 242.   A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party."   *Id.* at 248; *Summers*, 368 F.3d at 885.

**III. Discussion**

> **A. Because Plaintiff did not state a claim against the VA police in her Complaint, summary judgment is granted to the United States on this issue.**

In its Motion for Summary Judgment, the United States argues that Plaintiff did not state a claim against the VA police officers in her Complaint and, thus, maintains that Plaintiff cannot now seek summary judgment on the basis of any breach of the standard of care by the VA police.   The United States is correct that Plaintiff's Complaint sounds solely in medical malpractice and does not plead any cause of action against the VA Police; thus, summary judgment is granted to the United States on this issue. *See Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 787-89 (6th Cir. 2005) (affirming the district court's decision to refuse to consider a new claim raised on summary judgment because the claim was not raised in the complaint).

6

Plaintiff responds with two arguments. First, she claims that the VA police were in fact named in the Complaint because she defined "U.S. Defendants" as the "officers, agents, servants, employees, and/or representatives" of the United States, and later stated that Mr. Bowing "suffered severe personal injury and death" because of the "failure of the U.S. Defendants." (D.E. 57, Plaintiff's Reply, at 3; D.E. 1, Complaint, at 3). Second, Plaintiff correctly points out that our liberal notice pleading system only requires a short and plain statement of the claim to give the defendant fair notice of the claim and its grounds. (D.E. 57, Plaintiff's Reply, at 2); *see Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (noting that the Rules only require a short and plain statement of the claim). Plaintiff argues that she complied with these notice pleading requirements because she expressly included her claim against the VA police in her predecessor tort claim filed with the Department of Veterans Affairs pursuant to 38 C.F.R. § 14.604(b). (D.E. 57, Plaintiff's Reply, at 3).

However, neither of Plaintiff's arguments change the ultimate conclusion that she did not state a cause of action against the VA police in her Complaint. Although

7

the Plaintiff does indeed define "U.S. Defendants" as the "officers, agents, servants, employees, and/or representatives" of the United States, she does not mention the VA police officers anywhere in the remainder of her Complaint. (D.E. 1, Complaint, at 3). Further, she describes the breach of the standard of care by the U.S. Defendants as the "failure to exercise the degree of care and skill that would be expected of an ordinarily prudent or reasonably competent physician or health care provider under like or similar circumstances" during the rendering of "medical services, examinations, treatments, diagnoses and medical care for Don Bowling." (D.E. 1, Complaint, at 4-5). Thus, a fair reading of her Complaint asserts a cause of action solely against the VAMC medical staff for medical malpractice.

Further, while Plaintiff correctly notes that liberal notice pleading is allowed at the outset of litigation, these liberal pleading standards are inapplicable once a case has progressed to the summary judgment stage. *Tucker*, 407 F.3d at 788; (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("Once a case has progressed to the summary judgment stage, therefore, 'the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable.'"); *EEOC v. J.H. Routh*

*Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) (noting that even under our liberal notice-pleading regime, the Federal Rules of Civil Procedure still require the complaint to give the defendant fair notice of the claim and its supporting facts.").

Moreover, the United States may have had previous notice of facts suggesting a breach of the standard of care by the VA police, but this is unavailing.  Indeed, just because there are facts in existence that suggest some third party breached the standard of care does not mean that a plaintiff must or necessarily has asserted a claim against that third party in his complaint.  Had Plaintiff wished to state an additional cause of action against the VA Police in her Complaint, she could have done so, or she could have amended her Complaint at some point during or after discovery under Federal Rule of Civil Procedure 15(a).  *See Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 515 ("plaintiff is the master of his complaint.").  Because Plaintiff failed to do either of these things, consideration of a claim against the VA police on summary judgment is barred.

**B. Because Plaintiff's expert laid the proper foundations for his opinion and is qualified to testify, the United States' motion to exclude his testimony and consequent Motion for Summary Judgment on this basis is denied.**

In a medical malpractice case, Kentucky law generally requires a plaintiff to produce expert medical testimony to establish the applicable standard of care, its breach, and proximate cause to survive summary judgment. *See Green v. Owensboro Med. Health Sys. Inc.,* 231 S.W.3d 781, 783 (Ky. App. 2007); *Andrew v. Begley,* 203 S.W.3d 165, 170 (Ky. App. 2006). The United States argues that summary judgment in its favor is proper because Plaintiff's expert, Dr. Stephen Montgomery, did not lay the proper foundations for his opinion; therefore, the United States claims that Plaintiff lacked the requisite expert testimony required under Kentucky law to survive summary judgment. Specifically, the United States argues that an improper foundation was laid for Dr. Montgomery's opinion because 1) he is licensed in Tennessee; 2) he admitted in his deposition that he did not read the VAMC policies and procedures nor the Kentucky statutes upon which he partly based his opinion; 3) the article he relies on post-dates Mr. Bowling's death; and 4) his opinion is speculative.

The decision to allow a witness to testify as an expert is in the sound discretion of the trial judge.

10

*United States v. August*, 745 F.2d 400, 407 (6th Cir. 1984).
Utilizing this discretion here, there is little doubt that
Dr. Montgomery is qualified as an expert witness under
Federal Rule of Evidence 702. First, he is a licensed
psychiatrist who is familiar with the general standard of
care concerning involuntary commitment. Although he is
licensed in Tennessee, this is irrelevant as Kentucky does
not have a locality rule that solely allows medical
professionals familiar with the geographic area to offer an
expert opinion in a medical malpractice case. *Cf.* Tenn.
Code Ann. § 29-26-115 (outlining Tennessee's locality rule,
which generally requires medical professional expert
witnesses to be licensed in Tennessee before they can offer
expert testimony).

Further, although Dr. Montgomery admitted that he did
not read the VAMC policies and procedures nor the Kentucky
statutes on involuntary commitment, and although the
article that he cites post-dates Mr. Bowling's death, these
were not the sole bases for his opinion. Instead, Dr.
Montgomery also based his opinion on his education and
experience as both a licensed psychiatrist and as an
Assistant Professor of Psychiatry at Vanderbilt University,
which is sufficient to qualify him as an expert witness
under Federal Rule of Evidence 702. *See* Fed. R. Evid. 702

11

("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise...").

Finally, although it is sometimes appropriate to disallow expert testimony because the expert's opinion is speculative and does not meet the requirements of Federal Rule of Evidence 702, this case does not present one of these instances. For example, in the Sixth Circuit decision, *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665 (6th Cir. 2010), an expert's opinion linking manganese exposure to Parkinson's Disease because it "seemed the most likely explanation" was "no more than a hypothesis" and thus, under Federal Rule of Evidence 702, was speculative and inadmissible. *Tamraz*, 620 F.3d at 670. The United States' expert, Dr. David Shraberg, insists that Dr. Montgomery's opinion is similarly speculative because it is premised on the hypothesis that if Mr. Bowling had been administered a suicide risk assessment at the VAMC, then he would have necessarily been admitted and received treatment that would have lowered his risk of suicide. (D.E. 28-3, Expert Report of Dr. Shraberg, at 4; D.E. 57, Plaintiff's Reply, at 7).

However, just because Dr. Shraberg opines that Dr. Montgomery's opinion is speculative does not render Dr. Montgomery's opinion inadmissible. Unlike in *Tamraz*, Dr.

Montgomery is not offering a causation opinion that is unaccepted in his medical field, but rather is relying upon his experience as a psychiatrist to conclude that had Mr. Bowling been admitted to the VAMC on May 21, 2008, then, to a reasonable degree of medical certainty, he would not have committed suicide five weeks later. This is within the bounds of Rule 702. The assertions of the United States go to the weight, and not the admissibility, of Dr. Montgomery's opinion.

### C. A genuine issue of material fact exists as to whether the action or inaction of the VAMC medical staff on May 21, 2008, constituted a substantial factor in causing Mr. Bowling's suicide.

Under Kentucky law, legal causation occurs when a defendant's breach of the standard of care is a substantial factor in bringing about the plaintiff's injuries. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 92 (Ky. 2003); *Deutsch v. Shein*, 597 S.W.2d 141, 143-44 (Ky. 1980). Traditionally, causation is a mixed question of law and fact and will only be a pure question of law when "there is no dispute about the essential facts and [only] one conclusion may be reasonably drawn from the evidence." *Pathways, Inc.*, 113 S.W.2d at 92 (quoting *McCoy v. Carter*, 323 S.W.2d 210, 215 (Ky. 1959). Therefore, if reasonable minds can differ as to whether a defendant's conduct was a

13

substantial factor in causing a plaintiff's injuries, it is an issue of fact for trial. *Id.*

In this case, reasonable minds can, and do, differ as to whether the actions of the VAMC medical staff were a substantial factor in causing Mr. Bowling's suicide. Plaintiff's expert, Dr. Montgomery, opines that Dr. Hackney's failure to involuntarily admit Mr. Bowling on May 21, 2008, constituted a breach of the standard of care that was in turn a substantial factor in causing his suicide five weeks later. Contrarily, the United States' expert, Dr. Shraberg, opines that Dr. Hackney's failure to admit Mr. Bowling on May 21, 2008, was within the standard of care and was too far removed from Mr. Bowling's suicide on June 29, 2008, to satisfy causation. To choose one expert's opinion over the other is impermissible, as it is not the role of the trial judge to weigh the evidence on summary judgment. *Anderson*, 477 U.S. at 255. Moreover, given the five and a half week time period between the VAMC's alleged medical malpractice on May 21, 2008, and Mr. Bowling's death on June 29, 2008, it cannot be said on summary judgment that the VAMC medical staff's actions either were or were not necessarily a substantial factor in causing Mr. Bowling's death. Thus, legal causation is an appropriate issue for trial.

**IV. Conclusion**

For the reasons stated above, **IT IS ORDERED**:

(1) that Defendants' Motion for Summary Judgment (D.E. No. 37) shall be **GRANNTED**, **IN PART**, and **DENIED**, **IN PART**;

(2) that Plaintiff's Motion for Summary Judgment (D.E. No. 38) shall be **DENIED**.

This, the 17th day of October, 2012.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge